Hovhannes Bayburtski
CA Bar No. 348506
Vichi Law, PC
12400 Ventura Blvd, #411
Studio City, CA 91604
Telephone:(310)901-9112
Email: hovbaylaw@gmail.com; globallawusa@gmail.com
Attorney for Petitioner

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

CHUNYAN REN, an individual;

ZHIFANG YANG, an individual;

*Plaintiffs,*

v.

JINLONG DONG a/k/a DONG JINLONG,

an individual;

QU XIAO, an individual;

GEEK TECHNOLOGY VENTURE CAPITAL

CO., LTD, a business entity;

and DOES 1 through 50, inclusive,

*Defendants.*

Case No. _____

**COMPLAINT FOR:**

**1. Securities Fraud (Exchange Act § 10(b) / Rule 10b-5)**

**2. Sale of Unregistered Securities (Securities Act § 12(a)(1))**

**3. Material Misstatement in Sale of Securities (Securities Act § 12(a)(2))**

**4. Civil RICO (18 U.S.C. § 1962(c))**

**5. RICO Conspiracy (18 U.S.C. § 1962(d))**

## I. INTRODUCTION

1. This action arises from a multi-million-dollar international digital asset fraud scheme operated by Defendant Jinlong Dong ("Dong"), the creator and controller of a fraudulent investment platform called "Fantasy Space," promoted as a "U.S.-registered Web3 Metaverse Game Investment Platform." Dong defrauded investors through the sale of unregistered securities in the form of fake digital products, and separately defrauded Plaintiffs through a sham loan transaction secured by a mortgage on his residence, which he never intended to repay.

2. Dong promised investors guaranteed 4x returns, 100x to 10,000x appreciation, and "VIP gaming profits" through fraudulent products called "Lord Tokens," "Time Machines," "FantaKing," and cryptocurrency tokens such as FSS, FST, and FTS. These products constitute investment contracts and therefore securities under federal law, yet no registration statement was ever filed with the SEC and no exemption applies.

3. In addition to the securities fraud, Dong induced Plaintiffs to lend him USDT 1,600,000 (approximately $1,600,000 in U.S. dollars) pursuant to a written Loan and Mortgage Guarantee Agreement dated March 1, 2024, in which Dong pledged his residential property at 114 Interstellar, Irvine, CA 92618 (APN: 591-481-04) as collateral. Dong has defaulted on the loan and has attempted to sell the collateral property to dissipate assets and evade his obligations.

4. Dong operated a classic Ponzi-style scheme: he manipulated token prices, blocked withdrawals, changed rules, dissolved investor communities, and ultimately fled the United States while listing his Irvine home for sale in an attempt to avoid liability.

5. Plaintiffs bring this action under the Securities Exchange Act of 1934 (§ 10(b) and Rule 10b-5), the Securities Act of 1933 (§§ 12(a)(1) and 12(a)(2)), and the Racketeer Influenced and Corrupt Organizations Act ("RICO") (18 U.S.C. §§ 1962(c) and (d)), to recover their losses and to impose a constructive trust and equitable lien on Dong's residential property.

**II. PARTIES**

6. Plaintiff Chunyan Ren ("Ren") is an individual residing in Arcadia, California. She invested approximately $180,000 in Fantasy Space products and is a party to the Loan and Mortgage Guarantee Agreement.

7. Plaintiff Zhifang Yang ("Yang") is an individual residing in Irvine, California. She invested approximately $100,000 in Fantasy Space products and is a party to the Loan and Mortgage Guarantee Agreement.

9. Defendant Jinlong Dong ("Dong") is a natural person whose last known address is 114 Interstellar, Irvine, CA 92618. Dong is the founder and controller of Fantasy Space and Geek Technology Venture Capital Co., Ltd. Upon information and belief, Dong has fled the United States to avoid prosecution and civil liability.

10. Defendant Qu Xiao ("Xiao") is a natural person and the wife of Jinlong Dong, who acted in concert with Dong to operate the fraudulent investment scheme described herein.

11. Defendant Geek Technology Venture Capital Co., Ltd ("Geek Technology") is a business entity used by Dong to create a false appearance of legitimacy and U.S. regulatory compliance in order to solicit investment funds.

12. Plaintiffs sue DOES 1 through 50 because their true names and roles are currently unknown. Plaintiffs will amend this Complaint when their identities become known.

### III. JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) because this action arises under the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)), the Securities Act of 1933 (15 U.S.C. §§ 77e, 77l), and the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1962–1964).

14. This Court also has jurisdiction under Section 27 of the Securities Exchange Act of 1934 (15 U.S.C. § 78aa), which vests exclusive jurisdiction in federal district courts over violations of the Exchange Act and rules promulgated thereunder.

15. This Court has jurisdiction under Section 22 of the Securities Act of 1933 (15 U.S.C. § 77v), which grants concurrent jurisdiction to federal district courts over claims arising under the Securities Act.

16. Venue is proper in this District under 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Defendants maintained offices, transacted business, and

committed the acts complained of in the Central District of California, specifically in Orange County, California.

## IV. FACTUAL ALLEGATIONS

### A. Dong Launches the Fantasy Space Fraud Scheme

17. Beginning in approximately September 2024, Dong partnered with a promoter known as "Miao, Shengming" to solicit Chinese-speaking investors worldwide into a fraudulent "metaverse game investment platform" called Fantasy Space.

18. Dong represented that Fantasy Space was a legitimate U.S.-registered Web3 company. He maintained an office at 100 Spectrum Center Drive, Suite 1020, Irvine, California, to create an appearance of legitimacy and U.S. regulatory compliance.

19. Dong claimed that Fantasy Space would launch a major metaverse game in January 2025 and that early investors would gain returns of 100x to 10,000x on their investments.

### B. Fraudulent Securities Offered and Sold Without Registration

20. Dong offered and sold the following investment products, each of which constitutes an "investment contract" and therefore a "security" under SEC v. W.J. Howey Co., 328 U.S. 293 (1946):

(a) "Lord Tokens" — digital tokens sold to investors with promises of guaranteed returns and company buyback programs;

(b) "Time Machines" — digital products promising "4x static plus dynamic returns";

(c) "FantaKing" — $10,000 VIP packages promising enhanced returns; and

(d) Cryptocurrency tokens designated FSS, FST, and FTS, the values of which were unilaterally controlled and manipulated by Dong.

21. No registration statement was filed with the SEC for any of these securities, and no exemption from registration applied.

22. Investors contributed money to a common enterprise (Fantasy Space) with an expectation of profits derived solely from Dong's managerial efforts. Dong promised guaranteed returns, referral rewards, and "company buyback programs." These representations were entirely false; the project never produced any metaverse game and never generated legitimate revenue.

**C. The Loan and Mortgage Guarantee Agreement**

23. On or about March 1, 2024, Dong entered into a written Loan and Mortgage Guarantee Agreement ("Loan Agreement") with Plaintiffs Zhifang Yang and Chunyan Ren (collectively, the "Lenders").

24. Under the Loan Agreement, Dong borrowed USDT 1,600,000 (one million six hundred thousand USDT, a cryptocurrency stablecoin pegged to the U.S. dollar, equivalent to approximately $1,600,000) from the Lenders, purportedly for "project investment" purposes.

25. Dong promised to repay the full principal in a lump sum upon maturity of the loan. The loan term ran from March 1, 2024 through February 28, 2025.

26. As security for the loan, Dong voluntarily pledged his residential property as collateral, specifically: 114 Interstellar, Irvine, CA 92618, identified by Assessor's Parcel Number (APN): 591-481-04 (the "Subject Property").

27. Dong has failed and refused to repay any portion of the loan principal despite the loan having matured on February 28, 2025. At the time Dong entered into the Loan Agreement, he had no intention of repaying the loan, and instead used the borrowed funds to further his fraudulent scheme and for personal enrichment.

28. Upon information and belief, Dong listed the Subject Property for sale in an attempt to dissipate assets and evade his obligations to Plaintiffs and other defrauded investors.

**D. Plaintiffs Were Personally Defrauded Through the Securities Scheme**

Plaintiff Ren's Losses ($180,000)

29. In January 2025, Ren visited Dong's Irvine office and personally met Dong, who guaranteed high returns and described Fantasy Space as "fully compliant."

30. Ren purchased seven Lord Tokens and invested over $180,000 in Time Machines, in reliance on Dong's false representations.

31. Dong subsequently changed the investment rules, diluted returns, blocked withdrawals, manipulated token values, shut down the Fantasy Space website, and disappeared from contact. Ren lost her entire $180,000 investment.

Plaintiff Yang's Losses ($100,000)

32. Yang was induced to invest based on assurances by Dong and his associates that Fantasy Space was a collaboration with an established entity known as "Sunflower" and would yield massive returns.

33. Yang purchased 20 Lord Tokens, 2 FantaKing packages, and approximately $60,000 in Time Machines, totaling approximately $100,000.

34. Like Ren, Yang was blocked from withdrawing funds as Dong manipulated the platform rules and ultimately shut it down. Yang lost her entire $100,000 investment.

**E. The Scheme Collapses and Dong Flees the United States**

35. By March through May 2025, Dong stopped token production, blocked all investor withdrawals, dissolved investor communication groups, shut down the Fantasy Space website, and fled the United States.

36. Dong listed the Subject Property at 114 Interstellar, Irvine, CA 92618 for sale prior to his departure, in a transparent attempt to liquidate and dissipate assets that serve as collateral for the Loan Agreement and that were acquired, in whole or in part, with misappropriated investor funds.

37. Over 50 victims have been identified, with total collective losses exceeding $1.7 million. Dong's scheme specifically targeted Chinese-speaking investors both domestically and internationally.

**F. Use of Interstate Wires and Mails**

38. In furtherance of the scheme, Defendants used interstate wires, including electronic communications (WeChat messages, emails, and internet-based platforms), interstate wire transfers of funds, and cryptocurrency transactions transmitted across state and international lines. Defendants also used or caused the use of U.S. mail services in connection with solicitation materials and business correspondence.

**V. CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**

**Securities Fraud — Violation of Section 10(b) of the Securities Exchange Act of 1934**

**and Rule 10b-5 (15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5)**

**(Against All Defendants)**

39. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

40. Defendants, directly and indirectly, by the use of means and instrumentalities of interstate commerce and of the mails, in connection with the purchase or sale of securities, knowingly or recklessly: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and omitted to state material facts necessary to make the statements made not misleading; and (c) engaged in acts, practices, and courses of business which operated as a fraud and deceit upon Plaintiffs.

41. Specifically, Defendants made the following material misrepresentations and omissions: (a) false guarantees of 4x, 100x, and up to 10,000x returns on investments; (b) false claims that

Fantasy Space was a U.S.-registered, fully compliant Web3 company; (c) false representations that a major metaverse game would launch in January 2025; (d) concealment that the scheme generated no legitimate revenue and operated as a Ponzi scheme; (e) concealment that token values were unilaterally controlled and manipulated by Dong; and (f) concealment that investor withdrawals would be blocked.

42. Defendants acted with scienter. Dong knew the representations described above were false or was reckless in not knowing. He never intended to develop a legitimate metaverse game, never registered the securities with the SEC, and operated the scheme solely to enrich himself at the expense of investors.

43. Plaintiffs justifiably relied on Defendants' misrepresentations and omissions and were damaged thereby. Ren lost $180,000, Yang lost $100,000, and Plaintiffs collectively lost $1,600,000 under the fraudulent Loan Agreement.

44. As a direct and proximate result of Defendants' violations, Plaintiffs have suffered damages in an amount to be proven at trial but not less than $1,880,000.

### SECOND CAUSE OF ACTION

**Sale of Unregistered Securities — Violation of Sections 5(a) and 5(c) of the Securities Act of 1933; Liability Under Section 12(a)(1) (15 U.S.C. §§ 77e(a), 77e(c), 77l(a)(1))**

**(Against All Defendants)**

45. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

46. The investment products offered by Defendants—Lord Tokens, Time Machines, FantaKing packages, and associated digital tokens—constitute "investment contracts" and therefore "securities" within the meaning of Section 2(a)(1) of the Securities Act of 1933 (15 U.S.C. § 77b(a)(1)) and the test established in SEC v. W.J. Howey Co., 328 U.S. 293 (1946).

47. Defendants offered and sold these securities by means of interstate commerce without a registration statement being in effect and without any applicable exemption.

48. Under Section 12(a)(1) of the Securities Act (15 U.S.C. § 77l(a)(1)), any person who offers or sells a security in violation of Section 5 is liable to the person purchasing such security from him for the consideration paid, with interest, less any income received, or for damages if the purchaser no longer owns the security.

49. Plaintiffs are entitled to rescission and recovery of the full consideration paid for these unregistered securities, plus interest.

### THIRD CAUSE OF ACTION

### Material Misstatement in Offer or Sale of Securities — Violation of Section 12(a)(2) of the Securities Act of 1933 (15 U.S.C. § 77l(a)(2))

### (Against All Defendants)

50. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

51. Defendants offered and sold securities to Plaintiffs by means of a prospectus or oral communication which included untrue statements of material fact and omitted to state material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading.

52. The material misstatements and omissions are set forth in detail in paragraphs 41 above.

53. Defendants cannot sustain the burden of proving that they did not know and, in the exercise of reasonable care, could not have known of such untruth or omission.

54. Under Section 12(a)(2), Plaintiffs are entitled to recover the consideration paid for such securities with interest thereon, less the amount of any income received thereon, or for damages if Plaintiffs no longer own such securities.

**FOURTH CAUSE OF ACTION**

**Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") — 18 U.S.C. § 1962(c)**

**(Against All Defendants)**

55. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

56. At all relevant times, Defendants Dong, Xiao, and Geek Technology constituted an "enterprise" within the meaning of 18 U.S.C. § 1961(4)—an association-in-fact enterprise engaged in, and the activities of which affected, interstate and foreign commerce.

57. Defendant Dong conducted and participated, directly and indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(5), consisting of multiple acts of: (a) wire fraud in violation of 18 U.S.C. § 1343, including the transmission of fraudulent investment solicitations, false promises of returns, and fraudulent loan representations through interstate wires and electronic communications; and (b) mail fraud in violation of 18 U.S.C. § 1341, including the use of U.S. mail for business correspondence and solicitation materials in furtherance of the scheme.

58. The pattern of racketeering activity included at least the following predicate acts:

(a) Transmission of fraudulent investment solicitations and false guarantees of returns to investors via interstate electronic communications (WeChat, email, internet platforms);

(b) Wire transfers and cryptocurrency transactions across state and international lines to collect investor funds under false pretenses;

(c) Inducement of Plaintiffs to enter the Loan Agreement through false representations regarding the purpose and repayment of the loan, transmitted via interstate wires;

(d) Manipulation of token prices and investment rules to prevent withdrawal of investor funds; and

(e) Attempted dissipation of assets, including the listing for sale of the Subject Property pledged as collateral, to evade obligations to Plaintiffs.

59. The predicate acts were related and continuous, forming a pattern of racketeering activity as required by 18 U.S.C. § 1961(5). The scheme operated from at least September 2024 through May 2025 and involved numerous fraudulent acts directed at over 50 victims.

60. As a direct and proximate result of Defendants' conduct of the enterprise through a pattern of racketeering activity, Plaintiffs have been injured in their business or property within the meaning of 18 U.S.C. § 1964(c).

61. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover threefold the damages they sustained, plus the costs of this suit and reasonable attorney's fees.

## FIFTH CAUSE OF ACTION

### RICO Conspiracy — 18 U.S.C. § 1962(d)

### (Against All Defendants)

62. Plaintiffs reallege and incorporate by reference all preceding paragraphs as though fully set forth herein.

63. Defendants conspired to violate 18 U.S.C. § 1962(c) by agreeing to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

64. Each Defendant knowingly and willfully agreed to the overall objective of the conspiracy and participated in the scheme described herein.

65. As a direct and proximate result of Defendants' conspiracy, Plaintiffs have been injured in their business or property. Plaintiffs are entitled to recover treble damages, costs, and reasonable attorney's fees under 18 U.S.C. § 1964(c).

### VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants, and award the following relief:

A. Compensatory damages in an amount to be proven at trial but not less than $1,880,000, representing $280,000 in securities fraud losses and $1,600,000 in losses under the fraudulent Loan Agreement;

B. Rescission and restitution of all consideration paid by Plaintiffs for unregistered securities under Section 12(a)(1) of the Securities Act, plus interest;

C. Damages under Section 12(a)(2) of the Securities Act for material misstatements in the offer and sale of securities;

D. Treble damages under 18 U.S.C. § 1964(c) for violations of the RICO statute;

E. A constructive trust and equitable lien on the real property located at 114 Interstellar, Irvine, CA 92618 (APN: 591-481-04), and on any other property or assets acquired by Defendants with misappropriated funds;

F. A lis pendens on the Subject Property;

G. Preliminary and permanent injunctive relief preventing Defendants from selling, transferring, encumbering, or otherwise dissipating any assets, including the Subject Property;

H. Disgorgement of all profits and proceeds obtained by Defendants through the fraudulent scheme;

I. Pre-judgment and post-judgment interest at the maximum rate permitted by law;

J. Reasonable attorney's fees and costs of suit pursuant to 18 U.S.C. § 1964(c) and any other applicable statute;

K. Such other and further relief as this Court deems just and proper.

Respectfully submitted this May 15, 2026.

By counsel,

/s/ Hovhannes Bayburtski

Hovhannes Bayburtski, Esq. CABar No. 348506

Attoney for Petitioner